# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| MARGARET BRUSEWITZ, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br>v.<br><br>DCM SERVICES, LLC,<br><br>    Defendant. | Case No.: 20-cv-854<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Margaret Brusewitz is an individual who resides in the Eastern District of Wisconsin (Kenosha County). Plaintiff is the widow of George Brusewitz.

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt Defendants sought to collect was incurred as a result of a consumer transaction.

6. Defendant DCM Services, LLC ("DCM") is a foreign Limited Liability Company with its principal offices located at 7601 Penn Ave So., Suite A600, Richfield, Minnesota 55423.

7. DCM does substantial business in Wisconsin and has registered agent, Corporation Service Company, 8040 Excelsior Drive, Suite 400, Madison, Wisconsin 53717.

8. DCM is licensed as a "Collection Agency" by the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

9. DCM is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

10. DCM is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

11. DCM is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

**FACTS**

12. On or around June 4, 2019 DCM mailed a debt collection letter to Plaintiff ("as Personal Representative of attorney for the Estate of GERALD BRUSEWITZ") regarding an alleged debt. A copy of this letter is attached to this complaint as Exhibit A.

13. Upon information and belief, Plaintiff received Exhibit A a few days after the date of the letter, on or around June 7, 2019.

14. Upon information and belief, the alleged debts referenced in Exhibit A were incurred as the result of a transaction for personal medical services with an agreement to defer

2

Case 2:20-cv-00854-PP    Filed 06/05/20    Page 2 of 15    Document 1

payment. *See Tylke v. Advanced Pain Mgmt., S.C.*, Case No. 14cv5354 (Milwaukee Co. Cir. Ct., Dec. 11, 2014) ("Any time a merchant sends a bill for goods or services after a consumer transaction has taken place, there is an 'agreement to defer payment.'"); *see also, e.g., Kelly v. Montgomery Lynch & Assocs.*, 2008 U.S. Dist. LEXIS 30917, at * 9-10 (N.D. Ohio Apr. 15, 2008) ("The debt at issue in this case involves financial expenses incurred … in exchange for medical services …. Pursuant to this debt, the Plaintiff was offered the right to receive medical services and to defer payment on those financial obligations. This is a classic transaction out of which debts arise under the FDCPA.").

15. Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

16. Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

17. Upon information and belief, Exhibit A is the first written communication DCM mailed to Plaintiff regarding the alleged debts referenced therein.

18. Exhibit A includes the following representations which largely reflect the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> You have the right to dispute the validity of this debt or any portion of it (including any portion of any listed account). We will assume this debt to be valid unless you do so within 30 days after receipt of this letter. If you do so in writing within that time frame, we will obtain verification and mail it to you. If you send a written request within the same time frame, we will provide you with the name and address of the original creditor(s), if different from the current creditor(s).

3

Case 2:20-cv-00854-PP    Filed 06/05/20    Page 3 of 15    Document 1

19. Additionally, <u>Exhibit A</u> includes the following representations

> We are contacting you only in your capacity as Personal Representative or attorney for the Estate of GERALD BRUSEWITZ. We are attempting to collect a balance due from the assets of the Estate and any information obtained will be used for that purpose. As of the date of this letter, the Estate owes a total unpaid balance of $667.41. Please see attached account detail specifying the basis for the total unpaid balance due today. Please note that the total unpaid balance may change based on insurance payments or adjustments or other invoices not yet billed. We will inform you of any balance adjustments.

20. <u>Exhibit A</u> elsewhere represents the "Total Unpaid Balance" of the alleged debt at issue is $667.41

21. The second page of <u>Exhibit A</u>, which is entitled "ACCOUNT DETAIL," appears to itemize list of alleged debts owed to various creditors, which amount to a "Total Unpaid Balance" of $247.22.

22. <u>Exhibit A</u> includes plainly contradictory information regarding the amount of the alleged debt referenced therein, which would confuse the unsophisticated consumer.

23. First, <u>Exhibit A</u> represents that the "Total Unpaid Balance" of the alleged debt at issue is $667.41, but elsewhere represents that the "Total Unpaid Balance" is $247.22

24. Additionally, <u>Exhibit A</u> references a "balance due," which DCM seeks to collect "from the assets of the Estate," but it is unclear whether this "balance due" refers either of above amounts listed as the "Total Unpaid Balance" associated with the alleged or if it refers to some other amount entirely.

25. Furthermore, <u>Exhibit A</u> states: "Please note that the total unpaid balance may change based on insurance payments or adjustments or other invoices not yet billed. We will inform you of any balance adjustments."

26. Under 15 U.S.C. 1692g(a)(1), a debt collector must, within five days of the initial communication to a consumer regarding an alleged debt, "state the amount of the debt."

4

27. "It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it." *See Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004) (holding that a debt collection letter including the statement "To obtain your most current balance information, please call 1-800-[xxx]-[xxxx]" to be confusing as a matter of law); *Romonoyske v. Alltran Fin., LP*, No. 18-cv-7138, 2019 U.S. Dist. LEXIS 66272, at *2-3 (E.D.N.Y. Apr. 17, 2019) (statement that consumer should call debt collector "for further information about your balance" plausibly violated the FDCPA).

28. Two primary purposes of stating the amount of the debt are: (1) to inform the consumer how much she needs to pay to satisfy the debt; and (2) to arm the consumer with the information she needs to decide whether she should dispute the debt.

29. The above representations make it impossible for the consumer to know how much she must pay to satisfy the debt. She could tender payment of the amount stated, only later to be advised that the balance has increased, or she could tender payment of the amount stated, only to later discover that the amount of the debt was actually *less* than she had paid, but that she would need to expend time and effort to recoup any overpayment, and recoupment may even be barred by the voluntary payment doctrine.

30. The above representations also make it impossible for the consumer to know whether she should dispute the debt. For example, if the consumer believes she has already paid all or a portion of the debt, she may understand the statement to mean that she does not need to communicate a dispute the debt because the balance will decrease when the creditor provides this "additional information" on its own.

5

31. Plaintiff was misled and confused by Exhibit A.

32. The unsophisticated consumer would be misled and confused by Exhibit A.

### ***The FDCPA***

33. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("Spuhler I") ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the

6

FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lanev. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)).For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

34. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection

7

practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

35. Misrepresentations of the character, amount or legal status of any debt, including language confusing or obscuring purported settlement offers, injure or risk injury to interests expressly protected by Congress in the FDCPA. *See Degroot v. Client Servs.,* 2020 U.S. Dist. LEXIS 6677 (E.D. Wis. Jan. 15, 2020) ("[A]n informational injury can be concrete when the plaintiff is entitled to receive and review substantive information."); *Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Untershine v. Encore Receivable Mgmt., Inc.*, 18-cv-1484 (E.D. Wis. August 9, 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

36. 15 U.S.C. § 1692e generally prohibits: "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

37. 15 U.S.C. § 1692e(2)(a) specifically prohibits debt collectors from making false representations about "the character, amount, or legal status of any debt."

38. 15 U.S.C. § 1692e(10) specifically prohibits: "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

39. 15 U.S.C. § 1692g(a) states:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;

40. To satisfy § 1692g(a)(2), a debt collector must state the name of the creditor in a non-confusing manner:

> Section 1692g(a) requires debt collectors to disclose specific information, including the name of the current creditor, in certain written notices they send to consumers. If a letter fails to disclose the required information clearly, it violates the Act, without further proof of confusion.

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 319 (7th Cir. 2016).

41. 15 U.S.C. § 1692g(b) states, in relevant part: "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor."

### *The WCA*

42. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

43. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country,"

and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n**.**15, 596 N.W.2d 786 (1999) (citations omitted).

44. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

45. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

46. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

47. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

48. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court

10

analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

49. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

50. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer … in such a manner as can reasonably be expected to threaten or harass the customer."

51. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer …."

52. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## COUNT I – FDCPA

53. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

54. By first representing that the "Total Unpaid Balance" of the alleged debt at issue is $667.41, but elsewhere representing that the "Total Unpaid Balance" is $247.22, Exhibit A fails to unequivocally identify the amount of the alleged debt referenced therein.

55. Defendant violated 15 U.S.C. § 1692e, 1692e(2)(a), 1692e(10), 1692g(a)(1), and 1692g(b).

## COUNT II – WCA

56. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

57. By first representing that the "Total Unpaid Balance" of the alleged debt at issue is $667.41, but elsewhere representing that the "Total Unpaid Balance" is $247.22, Exhibit A fails to unequivocally identify the amount of the alleged debt referenced therein and therefore could be reasonably expected to threaten and harass Plaintiff.

58. Exhibit A similarly violates the FDCPA.

59. DCM is licensed as a "Collection Agency" by the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

60. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## COUNT III – FDCPA

61. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

62. By referencing a "balance due," where it is unclear whether this "balance due" refers either of amounts listed as the "Total Unpaid Balance" associated with the alleged or if it refers to some other amount entirely, Exhibit A fails to unequivocally identify the amount of the alleged debt referenced therein.

63. Defendant violated 15 U.S.C. § 1692e, 1692e(2)(a), 1692e(10), 1692g(a)(1), and 1692g(b).

## COUNT IV – WCA

64. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

65. By referencing a "balance due," where it is unclear whether this "balance due" refers either of amounts listed as the "Total Unpaid Balance" associated with the alleged or if it refers to some other amount entirely, Exhibit A fails to unequivocally identify the amount of the alleged debt referenced therein and therefore could be reasonably expected to threaten and harass Plaintiff.

66. Exhibit A similarly violates the FDCPA.

67. DCM is licensed as a "Collection Agency" by the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

68. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## COUNT V – FDCPA

69. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

70. By stating: "Please note that the total unpaid balance may change based on insurance payments or adjustments or other invoices not yet billed. We will inform you of any balance adjustments," Exhibit A fails to unequivocally identify the amount of the alleged debt referenced therein.

71. Defendant violated 15 U.S.C. § 1692e, 1692e(2)(a), 1692e(10), 1692g(a)(1), and 1692g(b).

## COUNT VI – WCA

72. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

73. By stating: "Please note that the total unpaid balance may change based on insurance payments or adjustments or other invoices not yet billed. We will inform you of any balance adjustments," Exhibit A fails to unequivocally identify the amount of the alleged debt referenced therein and therefore could be reasonably expected to threaten and harass Plaintiff.

74. Exhibit A similarly violates the FDCPA.

75. DCM is licensed as a "Collection Agency" by the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg. 74.

76. Defendant violated Wis. Stat. §§ 427.104(1)(g) and 427.104(1)(h).

## CLASS ALLEGATIONS

77. Plaintiff brings this action on behalf of a class consisting of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter by Defendant in the form of Exhibit A to the complaint, (c) dated June 4, 2019 through June 4, 2020, inclusive, (d) that was not returned by the postal service.

78. The class is so numerous that joinder is impracticable. On information and belief, there are more than 50 class members.

79. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common questions are whether Exhibit A violates the FDCPA and/or WCA.

80. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

81. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

82. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

83. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) injunctive relief;

(d) punitive damages;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: June 5, 2020

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com